# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,        :        Case No. 1:03-cr-006
                                            Also 1:08-cv-024

  - vs -                                  District Judge Timothy S. Black
                                            Magistrate Judge Michael R. Merz

ALI ALADIMI,

        Defendant.       :

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant's Motion to Vacate pursuant to 28 U.S.C. § 2255 (Doc. No. 435). On the Court's Order to do so, the United States has filed an Response (Doc. No. 458). Although the Court set a reply date for Defendant, he has not filed a reply within the time allowed. The Motion is therefore ripe for decision.

### Procedural History

Defendant was indicted on January 8, 2003 (Doc. No. 10). A superseding indictment was filed April 15, 2003 (Doc. No. 77). In May, 2004, Defendant entered into an original plea agreement with the United States (Doc. No. 238). In April, 2005, Judge Beckwith ordered the case reassigned to another judge to hear Defendant's motion to withdraw his guilty plea and Judge Watson was assigned (Doc. No. 282, 283). Although that Motion was initially denied, Judge Watson granted it on reconsideration (Doc. No. 339). On October 26, 2007, Defendant entered into a new plea

agreement with an agreed stipulated sentence and was sentenced as agreed (Doc. Nos. 418, 420). No appeal was taken, but a year later Defendant, represented by new retained counsel, filed the instant Motion (Doc. No. 435). Defendant filed a Motion for Recusal at the same time (Doc. No. 436), the litigation and appeal of which took until November 30, 2009. Then in July, 2010, retained counsel withdrew because he had left the private practice of law and his new firm, the Federal Public Defender, had represented another party in the case. Upon his appointment as a District Judge, this case was transferred to Judge Timothy Black who referred it to the undersigned (Doc. No. 448). It was then possible to conduct the initial review under Rule 4 of the Rules Governing § 2255 Cases and the Government was ordered to answer, which it has done (Doc. Nos. 453, 458).

## Analysis

Defendant pleads three claims of ineffective assistance of trial counsel, to wit, ineffectiveness in the pre-trial proceedings, during the plea process, and in failing to take an appeal when asked to do so (Motion, Doc. No. 435, PageID 3480, 3481, 3483).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the

>  result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

### Pre-Trial Ineffectiveness

Petitioner's first claim of ineffective assistance is that his last trial attorney, Patrick Hanley, failed to prepare for trial, failed to investigate the case, and failed to file what would have been a successful motion to dismiss for violation of the Speedy Trial Act (Motion, Doc. No. 435, PageID 3492-3498).

With respect to the lack of preparation claim, as the Government points out, Defendant has

failed to offer any specificity as to what would have been found by further investigation. Indeed, although Defendant claims he had witnesses who would have testified in his behalf, he fails to name them or even suggest what they would have testified to. It is true as Defendant points out in his supporting Memorandum that there have been cases, particularly capital cases[1], where trial counsel have been found constitutionally ineffective for failure to investigate, but that claim cannot be made in blank. Rather there must be some showing of what a further investigation would have found.

Having failed to indicate what further investigation would have uncovered, Defendant has also failed to show that whatever omissions his trial counsel committed somehow prejudiced him. It is not enough that there may have been potential witnesses; Defendant must also show that there testimony would likely have made a difference.

With respect the his Speedy Trial Act claim, Defendant asserts that the speedy trial 70-day clock began to run September 30, 2006, when the Court granted his motion to withdraw his first guilty plea. As Defendant notes, the Court granted an eight-month continuance on October 23, 2006, because of the complex nature of the case. Defendant faults the Court for not noting that the United States had ample time to prepare the case for trial between late 2002 when it was filed and September, 2006 (Memorandum, Doc. No. 435, PageID 3497). Of course, more than two years of that time was occasioned by Defendant's plea of guilty and then lengthy litigation of the plea withdrawal motion. A case which is prepared for trial at a particular moment in time does not necessarily stay prepared into the indefinite future. In the October, 2006, continuance, the Court set the trial for June 4, 2007, but then continued the trial until November on Defendant's motion. The

---

[1] Both cases cited, *Frazier v. Huffman,* 343 F.3d 780 (6th Cir. 2003), and *Jells v. Mitchell*, 538 F.3d 478 (6th Cir. 2008), are capital cases. The American Bar Association has promulgated and the Supreme Court has recognized and entirely separate set of standards for the performance of counsel in capital cases.

time consumed by that continuance is not chargeable to the United States under the Speedy Trial Act.  Of course, the plea agreement on which Defendant was ultimately sentenced was entered into in October, 2007.

### Improvident Plea

Defendant's second claim is that his attorney was ineffective in the plea process, leading to his improvident acceptance of the second plea agreement.  As part of the relief sought on the Motion, he now wishes to withdraw his plea and proceed to trial.

The same standards apply in evaluating ineffective assistance claims in cases which resulted in a negotiated plea.  *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988).  In order to satisfy the "prejudice" prong of *Strickland* in a negotiated plea case, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial.  *Hill*, 474 U.S. at 58.

Although Defendant says that, if given an opportunity to do so, he would have proceeded to trial, the best test of the credibility of that claim is that when he was given a chance before to withdraw his prior guilty plea and proceed to trial, he did not do so, but accepted a new plea agreement.

Nor does Defendant offer any suggestion as to why it would have been preferable for him to proceed to trial. He was charged in a 63-count indictment and ended up pleading to three of those counts and receiving an agreed sentence of 97 months. He makes no suggestion in his Memorandum of any viable defense he could have presented at trial or indeed of any more favorable bargain he

might have received. During the plea colloquy, Defendant swore "many times over"[2] that he was pleading guilty because he was in fact guilty. He also swore under oath at the plea colloquy that he was satisfied with the service he had received from his attorney and that the attorney had negotiated the plea agreement with him and the Government.

In sum, Defendant has not submitted any evidence or argument to satisfy the standard for setting aside a guilty plea as involuntary.

## Failure to Appeal

Defendant now claims that at some time after the October 19, 2007, proceeding at which the plea colloquy happened, the plea agreement was accepted, and he was sentenced to the agreed upon sentence, he asked his attorney to appeal and his attorney did not.

Failure to file a notice of appeal on request is ineffective assistance without any showing of prejudice. *Ludwig v. United States,* 162 F.3d 456 (6th Cir. 1998). The Sixth Circuit also held "We emphasize, of course, that a defendant's actual "request" is still a crucial element in the Sixth Amendment analysis. The Constitution does not require lawyers to advise their clients of the right to appeal. Rather, the Constitution is only implicated when a defendant actually requests an appeal, and his counsel disregards the request." *Ludwig*, 162 F.3d at 459. In *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), the Supreme Court rejected a *per se* rule which would require an attorney to file a notice of appeal regardless of whether the client asks. The Court held counsel must consult with the client about the advantages and disadvantages of taking an appeal when there is reason to think that a rational defendant would want to appeal or this particular defendant reasonably demonstrated

---

[2]Quoting the Answer, Doc. No. 458, PageID 3609.

to counsel that he was interested in appealing.

In this case there is no evidence Defendant ever requested counsel to appeal or that he did so within the time when an appeal could have validly been filed. What is before the Court is the bald statement by Defendant's counsel, unverified by Defendant, that the request was made sometime "after October 19, 2007." Of course, if the request was made after October 29, 2007, it would have been too late; the Court of Appeals would have had no jurisdiction to hear an appeal filed after that.

Nor would counsel have had any reason to suppose Defendant would have wanted to appeal, since he had obtained an agreed-upon sentence. Defendant does not even begin to suggest any issues which would have been likely to result in a successful appeal.

## Conclusion

Defendant's three claims of ineffective assistance of trial counsel are without merit and the Motion should therefore be denied on the merits. Because reasonable jurists would not disagree with this conclusion, Defendant should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

September 20, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).